UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEQUENT PERFORMANCE
PRODUCTS, INC.,

    Plaintiff,

v.

HOPKINS MANUFACTURING
CORPORATION *et al..*,

    Defendants.

Case No. 13-cv-15293
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF ## 68, 70)

On March 3, 2017, Plaintiff Cequent Performance Products, Inc. filed a motion to compel the production of unredacted documents that Defendant Hopkins Manufacturing Corporation had previously produced in redacted form. (*See* ECF ## 68, 70.)[1] As set forth below, the Court **GRANTS** the motion in part and **DENIES** the motion part.

# I

During discovery, Hopkins produced certain documents to Cequent that contained redactions. Hopkins identified twelve such documents on a supplemental privilege log dated January 27, 2017. (*See* ECF #70-1.) In that log, Hopkins claimed

---

[1] Cequent filed two identical versions of its motion. ECF #68 is unsealed and contains limited redactions. ECF #80 is sealed and contains no redactions.

that the redacted portions of the listed documents were protected from disclosure because they reflect "attorney-client patent advice sought or received from [outside patent counsel] Tom Luebbering." (*Id.* at Pg. ID 2280-81.)

In the motion to compel, Cequent sought the production of unredacted copies of eleven of the twelve documents listed on the supplemental privilege log.[2] (*See* ECF #70.) Cequent asked the Court "to review the withheld documents *in camera* to determine whether they are privileged and, if not, then order Hopkins to produce them." (*Id.* at Pg. ID 2272.)

Hopkins opposed both an *in camera* review and any required production of the unredacted documents. (*See* ECF #74.) Hopkins insisted that "[t]he information withheld from production and described in [the] Supplemental Privilege Log" did not need to be produced because it "consist[ed] of communications between Hopkins' corporate representatives relating directly to legal advice of patent counsel that was sought and/or received to aid Hopkins in its pursuit of developing the Agility [brake controller]." (*Id.* at Pg. ID 2340.)

On March 22, 2017, the Court entered a written Order in which it required Hopkins to produce unredacted copies of the eleven documents at issue to the Court for an *in camera* review. (*See* ECF #74.) The Court then received the documents

---

[2] The supplemental privilege log identifies twelve documents numbered 1-12. (*See* ECF #70-1.) In the motion to compel, Cequent seeks production of the documents numbered 1-11.

2

and reviewed them in light of the representations Hopkins made on the supplemental privilege log and in its response to Cequent's motion to compel.

Following the Court's *in camera* review of the documents, it held a telephonic hearing on the motion to compel. (*See* ECF #92.) During that hearing, the Court agreed with Hopkins that, in theory, the redactions at issue could potentially be protected by the attorney-client privilege if they were created for the purpose of receiving legal advice and/or reflect legal advice received from counsel. *See, e.g.*, *Williams v. Sprint/United Management Co.*, 238 F.R.D. 633, 638-39 (D. Kan. 2006) (citing cases and noting that "the attorney-client privilege extends to communications made within a corporation if those communications are made for the purpose of securing legal advice"). However, the Court told Hopkins that it had concerns that there was not sufficient evidence in the record specifically tying the redactions here to legal advice that Hopkins sought or received. The Court then provided Hopkins one final opportunity to produce additional evidence of privilege through the submission of declarations from the authors of the redacted documents. The Court also allowed Cequent to depose these declarants and, after those depositions, to file a reply brief in further support of its motion to compel.

On April 27, 2017, Hopkins filed the declarations of Gary Kamisnki and Daniel Scheller, the identified authors of ten of the eleven documents at issue.[3] (*See* ECF ## 98, 99.) Kamisnki and Scheller both stated in their declarations that the redacted portions of the documents "reflect legal advice to be sought from counsel, Mr. Tom Luebbering" or reflect advice "received" from Luebbering. (Kaminski Decl. at ¶¶ 6-7, ECF #98 at Pg. ID 3852-53; *see also* Scheller Decl. at ¶8, ECF #99 at Pg. ID 3855-56.) Hopkins then took the depositions of both Scheller and Kamisnki. (*See* Deposition Transcripts, ECF ## 102-1, 102-3.) It also filed a reply brief in further support of the motion to compel. (*See* ECF #102.) On May 19, 2017, Hopkins filed a motion for leave to file a sur-reply in further opposition to the motion to compel (*see* ECF #103), and the Court granted such leave on May 22, 2017. (*See* Dkt.)

## II

"The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).[4] "But because the privilege operates to reduce the amount of

---

[3] The remaining document at issue was drafted by Jon Gray. (*See* ECF #70-1.) Gray has not filed a declaration with respect to the motion to compel.

[4] While this is a patent infringement action, the Federal Circuit "applies the law of the regional circuit, here the [Sixth] Circuit, with respect to questions of attorney-client privilege and waiver of attorney-client privilege." *Fort James Corp. v. Solo*

information discoverable during the course of a lawsuit, it is narrowly construed." *Id.*; *see also In re Columbia/HC Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) ("The privilege applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice") (internal quotation marks omitted). "The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

## III

### A

### *The Scheller Documents*

Hopkins has not carried its burden to establish that the redactions on documents identified on the supplemental privilege log as authored by Dan Scheller – documents three (bates-numbered HOPKINS0043804), four (HOPKINS0043808), and ten (HOPKINS0046161-78) (the "Scheller Documents") – are protected by the attorney-client privilege. At his deposition, in stark contrast to his declaration, Scheller testified that he "d[id] not know" whether the redactions included on the Scheller Documents "reflect[ed] either advice that was sought from

---

*Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005); *see also In re Regents of University of California*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) (applying Seventh Circuit law to attorney-client privilege issue and noting that "[f]or procedural matters that are not unique to patent issues, [the Federal Circuit] appl[ies] the perceived law of the regional circuit").

counsel or advice that was received" from counsel, and he agreed that he "[did not] have any basis to say that the redacted portions of any of [the Scheller Documents] actually do reflect advice to or from counsel." (Scheller Dep. at 15, ECF #102-1 at Pg. ID 3884.) For example, when Cequent showed Scheller document ten at his deposition, which are pages from his personal notebook that reflect notes he took during meetings, Scheller testified that he "ha[d] no idea" whether the redacted portions of that document "reflect[ed] advice that was either sought or received from counsel." (*Id.* at 18, ECF #102-1 at Pg. ID 3887.) Moreover, Scheller testified that he never communicated with an attorney and that he also had "no idea" what documents may have been shared with counsel or that counsel may have reviewed for Hopkins. (*Id.* at 10-13, 19-20, ECF #102-1 at Pg. ID 3879-81, 3888-89; *see also id.* at 14, ECF #102-1 at Pg. ID 3883 in which Scheller testified that he "[did] not know" exactly what documents were shared with counsel or when they may have been shared.) Simply put, Scheller could not say that any of the redactions on the Scheller Documents reflect advice that was either sought or received from counsel, and Hopkins has not presented any other evidence that the documents are privileged.

In Hopkins' sur-reply, it argues that the redactions on the Scheller Documents are privileged because Scheller "regularly communicated" with Kaminski and knew that Kaminski "communicated with Tom Luebbering regarding the design and development of Hopkins's Agility controllers." (ECF #103-1 at 6, pg. ID 4063.) But

6

these facts say nothing about whether the *specific* redactions from the Scheller Documents relate in any way to Kaminski's consultations with counsel. And Hopkins has not presented any evidence from Kaminski that the redactions on the Scheller Documents reflect legal advice he (Kaminski) sought or received. Accordingly, Hopkins has not met its burden to establish that the redactions on Scheller Documents are privileged and it must produce unreacted copies of those documents to Cequent.

**B**

*The Gray Document*

Hopkins has carried its burden to establish that the redactions of handwritten notes on the document identified on the supplemental privilege log as authored by Jon Gray – document seven (bates number HOPKINS0044571) (the "Gray Document") – are privileged. First, Hopkins produced Kaminski's declaration in which Kaminski swore under oath that "the information reflected in the redacted portion[]" of the Gray Document "constitutes legal advice sought or received from patent counsel, Mr. Tom Luebbering, that flowed between me and [Luebbering]…." (Kaminski Declaration at ¶7, ECF #98 at Pg. ID 3853.) Second, at Kaminski's deposition, he confirmed that his statement in the declaration about the Gray Document was "correct," "accurate," and was not "incomplete," and he affirmed that the redactions on that document "related to subjects [he] consulted with Mr.

7

Luebbering on." (Kaminski Dep. at 239, 242, ECF #102-3 at Pg. ID 3966, 3969; *see also id.* at 243, ECF #102-3 at Pg. ID 3970.) Hopkins has therefore produced sufficient evidence to carry its burden to establish that the redactions on the Gray Document are privileged and need not be produced to Cequent.

## C

### *The Kaminski Documents*

The privilege log identified the remaining seven documents at issue as authored in whole or in part by Kaminski (the "Kaminski Documents").[5] Document one on the supplemental privilege log (bates number HOPKINS0043673) consists of handwritten notes Kaminski drafted. Documents two (HOPKINS0043778), five (HOPKINS0044050), six (HOPKINS0044051), eight (HOPKINS0044967), nine (HOPKINS0045204), and eleven (HOPKINS0047457) are nearly identical copies of what are called "Project Spec Sheets" with nearly identical redactions.

Hopkins has established that the redaction on document two, Kaminski's handwritten notes, is privileged and need not be produced. Kaminski testified at his deposition that the redacted portion of those notes was "a reminder for [him] to talk to [his] patent attorney [Luebbering]." (Kaminski Dep. at 231, ECF #102-3 at Pg.

---

[5] While the supplemental privilege log identifies Kaminski as the "author" of the Kaminski Documents (*see* ECF #70-1), Kaminski testified at his deposition that he did not author the documents and he did not know who did. (*See* Kaminski Dep. at 271-72, ECF #102-3 a Pg. ID 3998-99.)

ID 3958.) And while Kaminski could not specifically remember when he spoke with Luebbering about that "reminder" (*see id.* at 233-35, ECF #102-3 at Pg. ID 3960-62), he testified that he believed it "would be in the span of one month or less" from when he drafted the note. (*Id.* at 237, ECF #102-3 at Pg. ID 3964.) Based on Kaminski's sworn deposition testimony, Hopkins has provided a factual basis under which the Court can conclude that the redacted text was created for the purpose of securing legal advice. *See Williams, supra*; *see also Graff v. Haverhill North Coke Co.*, 2012 WL 5495514, at *7 (S.D. Ohio. Nov. 13, 2012) (citing cases, including *Williams*, and noting that "[c]ourts have extended the protection outlined in *Upjohn* to communications between non-attorney corporate employees where the communications were made for purposes of securing legal advice from counsel"). That text is therefore protected by the attorney-client privilege and Hopkins does not have to produce an unredacted copy of this document to Cequent.

Hopkins has also met its burden to produce evidence that the redactions on the remaining six Kaminski Documents – the Project Spec Sheets – were created for the purpose of obtaining legal advice and that the redactions are therefore privileged. In his declaration, Kaminski swore under oath that "all" of the information from the redacted portions of the Project Spec Sheets "constitutes legal advice sought or received from patent counsel, Mr. Tom Luebbering, that flowed between me and Tom Luebbering…." (Kaminski Decl. at ¶7, ECF #98 at Pg. ID 3853.) And at his

9

deposition, Kaminski confirmed, again and again, that the redacted portion of these documents reflect advice he sought or received from Luebbering:

> Q: And do you see in paragraph 7 that you state, "Further based on my knowledge and participation in the development process of the Agility, I recall all the information reflected in the redacted portions of [the Project Spec Sheets] constitutes legal advice sought or received from patent counsel." Do you see that?
>
> A: Yes.
>
> Q: Is that a correct statement from you?
>
> A: Yes.
>
> Q: And is it complete or is there any information that you believe should be included in this paragraph to make it further complete?
>
> A: I believe the statement is accurate and that there's nothing eliminated from it that I would consider to make it incomplete.
>
> [....]
>
> Q: Out of those [] documents you identified, which of those identify redacted portions where they constitute legal advice you sought from Mr. Luebbering?
>
> A: All of the redacted portions of those documents related to subjects I consulted with Mr. Lueberring on.
>
> [....]
>
> Q: Okay. Which of these documents that you identify here in paragraph 7 [of Kaminski's declaration] include

redacted portions where you are seeking legal advice from Mr. Luebbering?

A: I believe all of them contain information where Tom and I had multiple conversations receiving and seeking information. I can't put specifics to any one.

[….]

Q: Do you know if legal advice was actually sought for any of these statements that are being redacted in Exhibit 263 [one of the Project Spec Sheets]?

A: Yes, I do.

Q: When?

A: It was sought and received numerous times, but I can't provide specific dates.

[….]

A: I had broad discussions with Tom Luebbering related to the potential patent issues involved here.

Q: When did that occur?

A: Most likely over a period of years.

Q: I'm not asking generally, I'm asking specifically. […] [W]hen did that occur?

A: I don't know.

Q: Okay. So it's possible it did not occur?

A: No, it is not.

[….]

11

> Q: Do all of the portions that have been redacted, whether or not you remember when you communicated with Mr. Luebbering, reflect either advice that was to be sought or received from Mr. Luebbering?
>
> […..]
>
> A: Yes.

(Kaminski Dep. at 239, 242-43, 253-54, 276, 290 ECF #102-3 at Pg. ID 3966, 3969-70, 3980-81, 4003, 4017.)

Cequent argues that despite this testimony from Kaminski, the redactions on the Project Spec Sheets are not protected by the attorney-client privilege because Kamisnki also testified that it was "possible" that the redactions related to patent research that he conducted on his own. (*See*, *e.g.*, *id.* at 263, 267, 278-85, ECF #102-3 at Pg. ID 3990, 3994, 4005-12.) Cequent interprets this testimony as a concession from Kaminski that he simply could not say whether the redactions contained privileged information. The Court disagrees.

The most reasonable interpretation of Kaminski's testimony, considered in its entirety, is that *to the best of his knowledge* the redactions on the Project Spec Sheet *do* reflect advice sought or received from counsel. The fact that Kaminski acknowledged the mere possibility that the redacted information may have come from his own independent research does not negate his repeated testimony that he *did believe* and *did claim* that the redacted information did reflect legal advice to be sought or already obtained. Kaminski's testimony, when read as a whole, satisfies

12

Hopkins' burden to establish that the redactions on the Project Spec Sheets are privileged. Hopkins therefore need not produce unredacted copies of the Project Spec Sheets to Cequent.

## IV

For the reasons stated above, Cequent's motion to compel (ECF ## 68, 70) is **GRANTED IN PART AND DENIED IN PART** as follows: Hopkins shall produce unredacted copies to Cequent of the documents identified as documents 3, 4, and 10, on Hopkins' January 27, 2017, supplemental privilege log within ten (10) days of this Order. Hopkins need not produce unredacted copies of any other document on the supplemental privilege log.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 24, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113